*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 16-BG-1146

FILED 06/28/2018
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

IN RE DOUGLAS B. EVANS, SR., RESPONDENT

A Member of the Bar of the District of Columbia Court of Appeals
(Bar Registration No. 423496)

On Report and Recommendation
Of the Board on Professional Responsibility
(DDN 437-11)

(Decided June 28, 2018)

Before FISHER and EASTERLY, *Associate Judges*, and FARRELL, *Senior Judge*.

PER CURIAM: Respondent, Douglas B. Evans, Sr., mishandled a criminal matter with the result that this court dismissed his client's appeal; his client (who, with the assistance of family, had paid Mr. Evans a flat fee of $4,000 to represent him on appeal and to file a motion to reduce his sentence[1]) had to petition this court for the appointment of substitute counsel; and the litigation of the appeal was

---

[1] Such a fee, paid up-front, before any work is done, is the property of the client until it is earned, and thus has to be placed into an appropriate account under Rule 1.15 (d), unless the client provides informed consent to a different arrangement. *In re Mance*, 980 A.2d 1196, 1201–02 (D.C. 2009).

delayed.  In this opinion we consider the nature of Mr. Evans's misconduct and the appropriate sanction.

Before the Ad Hoc Committee, Mr. Evans stipulated to the pertinent facts in writing and the Committee found that he had violated Rules of Professional Conduct 1.1 (a) (failure to provide competent representation); 1.1 (b) (failure to serve the client with commensurate skill and care); 1.3 (a) (failure to represent the client with diligence and zeal within legal bounds); 1.3 (c) (failure to act with reasonable promptness); 1.4 (a) (failure to keep the client reasonably informed about the status of the matter); 1.4 (b) (failure to explain the matter to the extent necessary to permit the client to make informed decisions regarding representation); and 1.16 (d) (failure to take timely steps to the extent reasonably practicable to protect the client's interests upon termination of representation, such as refunding advance payments).  The Committee recommended that Mr. Evans be suspended for a period of thirty days without a fitness requirement, stayed in favor of one year of supervised probation with the conditions requested by Disciplinary Counsel.[2]

---

[2]   Disciplinary Counsel requested that Mr. Evans attend the D.C. Bar's Practice Management Advisory Service (PMAS) two-day basic training course

(continued . . .)

Disciplinary Counsel filed exceptions with the Board on Professional Responsibility, objecting to the Hearing Committee's failure both to find a violation of Rule 8.4 (d) and to adopt the sanction to which the parties had agreed: a six-month suspension with a fitness requirement, stayed in favor of one year of supervised probation with the same conditions previously requested, see *supra* note 2. Mr. Evans filed no exceptions, but suggested that the Board adopt the stipulated six-month stayed suspension as a part of his sanction.

In its Report and Recommendation, the Board recommends that this court determine that Mr. Evans violated not only Rules 1.1 (a), 1.1 (b), 1.3 (a), 1.3 (c), 1.4 (a), 1.4 (b), and 1.16 (d) but also Rule 8.4 (d). The Board further recommends that the court adopt the Hearing Committee's recommendation that Mr. Evans be suspended for a period of thirty days, stayed in favor of a one-year probationary

_____

(. . . continued)

within thirty days of the order, attend said course within seven months of starting his probationary period, commit no more rule violations, take three hours of CLE courses preapproved by Disciplinary Counsel and present proof of attendance within ten days of completion, and accept the terms of probation within thirty days of its imposition. Disciplinary Counsel could also seek to revoke his probation if there was probable cause to believe that Mr. Evans violated any probationary terms.

period, but with slightly different conditions[3] than those endorsed by the Hearing Committee.  Neither Mr. Evans nor Disciplinary Counsel has filed an exception to the Board's Report and Recommendation.

Under D.C. Bar R. XI, § 9 (h)(2), "if no exceptions are filed to the Board's report, the [c]ourt will enter an order imposing the discipline recommended by the Board upon the expiration of the time permitted for filing exceptions."  *See also In re Viehe*, 762 A.2d 542, 543 (D.C. 2000) ("When . . . there are no exceptions to the Board's report and recommendation, our deferential standard of review becomes even more deferential."); *but see In re Askew*, 96 A.3d 52, 61 (D.C. 2014) (acknowledging that "[t]his court values and heavily relies upon the recommendations of the Board on Professional Responsibility," but "[u]ltimately . . . the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court").

---

[3] Instead of requiring Mr. Evans to attend the PMAS class, which Mr. Evans has already attended, the Board recommends a PMAS assessment and a requirement to implement any of the recommendations stemming from it.  Further, the Board recommends requiring written notice of Mr. Evans's probationary status to be disseminated to existing clients and any clients Mr. Evans might take on during the probationary period.

Here, we agree with the Board that the uncontested facts in this case support a determination that Mr. Evans violated Rule 8.4 (d) as well as Rules 1.1 (a), 1.1 (b), 1.3 (a), 1.3 (c), 1.4 (a), 1.4 (b), and 1.16 (d). As the Board correctly noted, "[t]o establish a violation of Rule 8.4 (d), [Disciplinary] Counsel must" establish that the conduct "(i) was improper"; (ii) bears "directly on the judicial process with respect to an identifiable case or tribunal"; and (iii) "taints the judicial process in more than a *de minimis* way." *See In re Hopkins*, 677 A.2d 55, 60–61 (D.C. 1996). In particular, we highlight the fact that Mr. Evans accepted a flat fee, failed to do the work he was hired to do, and then failed to immediately pay the money back.[4] His client, apparently unable to amass more money to hire another lawyer, then had to ask this court for the appointment of counsel at the public's expense. Such an abrogation of a lawyer's duty to competently represent and zealously advocate for his clients, *Askew*, 96 A.3d at 60, coupled with the abrogation of his fiduciary duty to properly handle client funds, *In re Kanu*, 5 A.3d 1, 8 (D.C. 2010), adversely impacts the judicial process and the court's resources, not to mention the public's perception of the Bar, and is clearly sufficient to sustain a Rule 8.4 (d) violation. *See In re Vohra*, 68 A.3d 766, 783 (D.C. 2013) (neglecting a client's

---

[4] Four months after his client's appeal was dismissed, Mr. Evans gave his client a partial refund of $1500 pursuant to an order by the Attorney/Client Arbitration Board ("the ACAB"). Six months later, he refunded his client the balance of the fee.

case caused "unnecessary expenditure of time and resources" which violated Rule 8.4 (d)).

As for the proper sanction, we accept the Board's recommendation, notwithstanding that the Board recommends a term of suspension (thirty days), which is less than the six-month term to which Mr. Evans and Disciplinary Counsel agreed to. Disciplinary Counsel did not file an exception to the Board's recommended sanction, however, nor is the Board's recommended sanction so out of sync with our existing precedent so as to warrant departure from it to preserve consistency.[5] *Askew*, 96 A.3d at 61 (departing from the Board's recommended

---

[5] We are aware of other cases in which an attorney who failed to return an unearned flat fee in violation of Rule 1.16 (d) was also charged with misappropriation for failing to keep the client's funds separate from the attorney's funds and allowing the balance of that account to drop below the amount owed to the client, in violation of Rule 1.15 (a) & (e). *See, e.g., In re Stovell*, No. 18-BG-115 (D.C. June 28, 2018). The record does not reflect whether a Rule 1.15 violation could have been charged in this case, but we note that such violations typically result in a longer suspension if merely negligent, *see, e.g., In re Edwards*, 870 A.2d 90, 94 (D.C. 2005) ("A six-month suspension without a fitness requirement is the norm for attorneys who have committed negligent misappropriation of entrusted funds together with the related violations."), and may result in disbarment if intentional or reckless. *See In re Addams*, 579 A.2d 190, 191 (D.C. 1990) (en banc) ("[I]n virtually all cases of misappropriation [of client funds], disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence."); *see also id.* at 194 ("There is nothing clearer to the public . . . than stealing a client's money and nothing worse.") (internal quotation omitted); *In re Ahaghotu*, 75 A.3d 251,

(continued . . .)

disciplinary sanction in part based on a concern about "foster[ing] a tendency toward inconsistent dispositions for comparable conduct").

Accordingly, it is

ORDERED that Douglas B. Evans, Sr., is hereby suspended for a period of thirty days, stayed in favor of a one-year probation. During the probationary period Mr. Evans shall not commit any further rule violations, shall provide written notice of the probation to existing clients at the beginning of the period of probation and clients who retain Mr. Evans during the period of probation, must accept the terms of the probation within thirty days of this order, and shall comply with the conditions listed below. If Mr. Evans violates any of the conditions, Disciplinary Counsel may petition for imposition of the stayed suspension. Mr. Evans's probation is subject to the following additional conditions:

1. Within thirty days of this order, Mr. Evans shall make arrangements to undergo an assessment by the D.C. Bar's Assistant Director for

_____

(. . . continued)
258 (D.C. 2013) (holding that the reckless misappropriation of entrusted funds warranted disbarment).

Practice Management Advisory Service, shall undergo the assessment within the first seven months after the date of this order, and shall implement any recommendations made following the assessment and sign a limited waiver permitting that program to confirm compliance with this condition and cooperation with the assessment process.

2. Mr. Evans must attend three hours of Continuing Legal Education course(s) that have been pre-approved by Disciplinary Counsel and present proof of attendance and completion of the coursework to Disciplinary Counsel within ten days of completing the course(s).

*So ordered.*